IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Cr. No.   6:14-465-HMH |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| Arturo Mendez-Gomez, | ) | |
| | ) | |
| Movant. | ) | |

This matter is before the court on Defendant Arturo Mendez-Gomez's ("Mendez-Gomez") pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). On October 27, 2014, Mendez-Gomez pled guilty pursuant to a plea agreement to one count of conspiracy to commit Hobbs Act Robbery (count 1 of the superseding indictment) in violation of 18 U.S.C. § 1951(a), and two counts of brandishing a firearm in furtherance of a crime of violence (counts 6 and 10 of the superseding indictment) in violation of 18 U.S.C. § 924(c)(1)(A). Mendez-Gomez was sentenced on February 18, 2015, to two hundred forty months' imprisonment, consisting of six months as to count 1, 84 months as to count 6, and 150 months as to count 10, all terms to be served consecutively. Mendez-Gomez did not appeal his conviction.   On February 26, 2025, Mendez-Gomez filed the instant motion for compassionate release arguing that extraordinary and compelling reasons justify a sentence reduction because (1) he is the only available caregiver for his incapacitated mother, and (2) extraordinary rehabilitation.   (Mot. Compassionate Release 1-3, ECF No. 114.)   After being ordered to respond, the Government filed a response in opposition on May 21, 2025.   (Gov't Resp. Opp'n, ECF No. 121.)   To date, no reply has been filed.   This matter is ripe for consideration.

1

## II. LEGAL FRAMEWORK

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The compassionate-release statute, however, authorizes a court to reduce a defendant's sentence if, after considering the 18 U.S.C. § 3553(a) factors, it finds that (1) "extraordinary and compelling reasons" warrant a reduction and (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A).

The "applicable policy statement[]" reiterates the statutory requirements, with the additional requirement that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(a)(2); see also U.S.S.G. Supp. to App. C, Amend. 814, Reason for Amendment (effective Nov. 1, 2023) ("extend[ing] the applicability of the policy statement to defendant-filed motions"). The policy statement then enumerates six categories of "extraordinary and compelling reasons" that may justify compassionate release: (1) the defendant's medical circumstances, (2) the defendant's advanced age, (3) the defendant's family circumstances, (4) the defendant's status as a "victim of abuse," (5) any other reasons that are "similar in gravity" to the first four categories, and (6) certain changes in law if the defendant has served ten years of an "unusually long sentence" and the "change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(1)-(6). Under the policy statement, a defendant's rehabilitation "is not, by itself, an extraordinary and compelling reason" but "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." Id. § 1B1.13(d).

At the final step of the compassionate-release analysis, the court considers the § 3553(a) sentencing factors "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). These factors include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the need for the sentence to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment," deter crime, protect the public from the defendant's future criminal conduct, and provide the defendant with needed "correctional treatment"; (3) "the kinds of sentences available"; (4) the Guidelines sentencing range; (5) certain policy statements issued by the Sentencing Commission; (6) "the need to avoid unwanted sentence disparities among" similarly situated defendants; and (7) the need for victim restitution. 18 U.S.C. § 3553(a).

### III. DISCUSSION

**A. No Extraordinary and Compelling Reasons Warrant a Sentence Reduction.**

Mendez-Gomez argues that extraordinary and compelling reasons exist under U.S.S.G. § 1B1.13(b)(3) because he is the only available caregiver for his incapacitated mother who resides in Mexico. (Mot. Compassionate Release, ECF No. 114.) Section 1B1.13(b)(3)(C) provides that "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" may constitute an extraordinary and compelling reason for a sentence reduction. While the court empathizes with Mendez-Gomez's desire to care for his mother, he has failed to show that he is the only available caregiver for her. Mendez-Gomez submits that he has eight other siblings but that none of them are able to care for her due to either living in the United States or other parts of Mexico where they have families. (Mot. Compassionate Release 1-3, ECF No. 114.) Mendez-Gomez submits that upon his release, he

will be deported to Mexico and that he will take care of his mother. (Id., ECF No. 114.) Moreover, Mendez-Gomez states that a neighbor has been helping, but that this situation is temporary. (Id., ECF No. 114.) In seeking compassionate release, Mendez-Gomez "bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." United States v. Newton, 996 F.3d 485, 488 (7th Cir. 2021). Mendez-Gomez has failed to establish that none of his other eight siblings are available to care for their mother. While it might be inconvenient for his other siblings, there is no evidence that his siblings are unavailable, unwilling, or unable.

In addition, Mendez-Gomez has not established that his mother is incapacitated. In his motion, he states that she has a serious heart condition and requires assistance with activities of daily living. However, the only medical records provided by Mendez-Gomez is a lab result reflecting that his mother has elevated cholesterol and triglycerides. (Mot. Compassionate Release Ex. 1 (Medical Record), ECF No. 114-1.)

Aside from his general representations that no one is available to care for his mother, Mendez-Gomez has offered no evidence that he is the only available caregiver for his mother. (Reply 9, ECF No. 1292); United States v. Shovely, No. 7:15-cr-00105, 2021 WL 667906, at *3 (W.D. Va. Feb. 19, 2021) ("Shovely's desire to care for his parents is admirable and [he] is their only child, but he has neither argued nor demonstrated that he is their 'only available caregiver[.]'"); United States v. Richardson, No. 5:18-CR-507-IFL, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020) (declining to grant compassionate release "in the absence of a robust evidentiary showing that defendant is the only available caregiver"); United States v. Crisp, No. 1:11-cr-00026-JLT-1, 2022 WL 3448307, at *2 (E.D. Cal. Aug. 17, 2022) ("If a sick parent—

4

absent truly extraordinary circumstances—was considered a compelling reason, virtually any inmate seeking a sentence reduction on this ground could produce one.")  Based on the foregoing, the court finds that Mendez-Gomez has failed to show extraordinary and compelling reasons due to his family circumstances.

Finally, while Mendez-Gomez submits that his rehabilitation efforts are extraordinary and compelling reasons, a defendant's rehabilitation "is not, by itself, an extraordinary and compelling reason for" a sentence modification.  U.S.S.G. § 1B1.13(d); 28 U.S.C. § 994(t); see, e.g., United States v. McCain, No. 1:06CR203-1, 2023 WL 7385546, at *8 (M.D.N.C. Nov. 8, 2023) (unpublished); United States v. Feliz, No. 16 Cr. 809 (VM), 2023 WL 8275897, at *6 (S.D.N.Y. Nov. 30, 2023) (unpublished); United States v. Lewis, No. 04-344, 2024 WL 640023, at *3-4 (E.D. La. Feb. 15, 2024) (unpublished); United States v. Ross, No. 3:18-cr-00626-AN, 2023 WL 8868814, at *5 (D. Ore. Dec. 22, 2023) (unpublished).

For all of the reasons discussed above, Mendez-Gomez has failed to show extraordinary and compelling reasons for a reduction in his sentence under § 1B1.13.

### B. The § 3553(a) Factors Do Not Warrant a Sentence Reduction.

Even if Mendez-Gomez could show extraordinary and compelling reasons, the court has considered the factors under § 3553(a) and finds that the nature and circumstances of Mendez-Gomez's offense, his history and characteristics, and the need for his sentence to protect the public do not support a reduction in this case.  Mendez-Gomez's offenses in this case were particularly serious and dangerous.  He agreed with the following recitation of the facts during his guilty plea as follows:

> By way of illustration and in support of Counts 6 and 10, on January 11, 2014, at approximately 9:10 p.m., Hernandez, Mendez-Gomez, and an unidentified Hispanic male

5

entered the Tienda Morelense located at 335 White Horse Road in Greenville County, South Carolina. Mendez-Gomez and the unidentified male approached the cash register while Hernandez walked around the counter.

 Sixto Antonio-Francisco, who was working behind the counter, asked Hernandez why he was coming around the counter. And Hernandez pointed the semi-automatic pistol at Francisco's head. Francisco then struggled with Hernandez, during which time Mendez-Gomez and the unidentified male punched him in the jaw and the stomach. Mendez-Gomez and the unidentified male then pushed Francisco face down on the counter and held a knife on him. However, Francisco was able to break free and run to a door that was in the rear of the store to try to close it before the robbers entered.

 Two women, Siro Carillo and Gisell Moreno Carillo, and a three-year-old child were in the back. He was unable to close the door in time. Siro and Gisell began pushing against the door to prevent Hernandez from coming in, telling him that there was a child in the backroom with them. However, Hernandez overpowered the women and entered.

 After Hernandez entered, he saw Gisell calling 9-1-1 and hit her on the head with his gun. Gisell then saw Hernandez point the gun at her mother and she called 9-1-1. Mendez-Gomez and the unidentified male then entered the back room and told Hernandez that it was time to go.

 In the commotion, Francisco was able to grab a handgun he had hidden in the store and shoot at the three men as they left the store in what police believed was a red Nissan Xterra with $3,808 from the cash register and wire transfer money.

 At about 6:21 p.m. on February the 9th, 2014, Hernandez and Mendez-Gomez entered the Tienda Mexicana store located at 234 New Market Street in Greenwood County, South Carolina. Martin Olvera and his wife, Cristina, were working in the store and watching soccer at the counter. Hernandez, according to Martin, racked a round in the chamber of what appeared to be a semi-automatic pistol. Mendez-Gomez then ordered Martin to the rear of the store and tied him up.

 Meanwhile, Hernandez put the gun to Cristina's head and ordered her to remove the money from the cash register. After Cristina had given him all the money, Hernandez demanded more and threatened to kill Cristina if she did not give him any more. Cristina told him to go ahead and shoot her because she did not have any more money. Hernandez then ran to get Mendez-Gomez and both left in a Dodge Neon with about $350 in cash from the store.

(Guilty Plea Tr. 21-25, ECF No. 91.)   These armed robberies were violent and Mendez-Gomez brandished a firearm.   Further, there was a significant monetary loss of $40,729.00.   (PSR ¶ 14.)

The court recognizes Mendez-Gomez's positive rehabilitation efforts during his incarceration through undertaking educational opportunities and that he does not have a

6

significant prior criminal history. (Gov't Resp. Exs. 4 & 5 (Education Data), ECF Nos. 121-4, 121-5.) However, while Mendez-Gomez has maintained a positive disciplinary history for the last five years, he has received several disciplinary infractions during his incarceration including disruptive conduct, possessing a dangerous weapon, and possessing hazardous tools. (Gov't Resp. Ex. 2 (Disciplinary Report), ECF No. 121-2.) Having considered the § 3553(a) factors, Mendez-Gomez's 240-month sentence is more than appropriate in light of the seriousness and violence associated with these armed robberies. A 240-month sentence promotes respect for the law, deters crime, protects the public, and is "sufficient, but not greater than necessary," to achieve the statutory goals of sentencing. 18 U.S.C. § 3553(a).

It is therefore

**ORDERED** that Mendez-Gomez's motion for compassionate release, docket number 114, is denied.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
June 10, 2025

## NOTICE OF RIGHT TO APPEAL

Movant is hereby notified that he has the right to appeal this order within fourteen (14) days from the date hereof, pursuant to Rule 4 of the Federal Rules of Appellate Procedure.